UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10156-RGS

DYNELL LATSON and ANABEL LATSON

v.

PLAZA HOME MORTGAGE, INC.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS

March 13, 2012

STEARNS, D.J.

Plaintiffs Dynell and Anabel Latson invested in a three-family residential property in Dorchester, Massachusetts, in March of 2006.  The investment was made possible by two mortgage loans extended by defendant Plaza Home Mortgage, Inc. (Plaza), totaling $525,000.[1]  The Latsons allege that Plaza breached the covenant of good faith and fair dealing (Count I) and violated the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A (Count II), by financing 100 percent of the their purchase at "economically unviable" interest rates.[2]  *Id*. ¶¶ 14-15.  The Latsons

---

[1] Federal jurisdiction is asserted on grounds of diversity of citizenship, 28 U.S.C. § 1332.

[2] The Latsons allege that Plaza knew that they were "unable to appreciate the economic consequences of borrowing one hundred percent (100%) of the purchase

filed this Complaint on January 26, 2012, and Plaza filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on February 23, 2012.  No opposition has been filed by the Latsons.

### Count I

"The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'" *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (internal citations omitted).  "The scope of the covenant of good faith and fair dealing is shaped in each context by the nature of the contractual relationship." *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 573 (2010), citing *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

Here, the purpose of the contract was the creation of a lender-borrower

---

price of the Subject Property especially at the interest rates provided to Plaintiffs . . . ." Compl. ¶ 16.

relationship between the parties.  The "fruit" of the contract from the Latsons' perspective was the cash money required to purchase the investment property.  The Latsons would now read into the contract a provision imposing an obligation on Plaza *not* to loan them money to make an investment that over time proved unwise.  Not only would this proposed provision defeat the very purpose of the contract (contrary to the covenant), it would impose on the lender a duty that the law does not recognize.[3]  *See In re Fordham*, 130 B. R. 632, 646 (B. R. D. Mass. 1991) ("A lender, moreover, owes to its borrower or guarantor no duty to use reasonable care to determine that a project is sufficiently feasible to permit repayment of the loan.").

The Latsons have alleged no other facts that would support a finding that Plaza breached the implied covenant of good faith and fair dealing.  *See Shawmut Bank, N.A. v. Wayman*, 34 Mass. App. Ct. 20, 25 (1993) ("In context [of the implied covenant], the duty of good faith would require that the bank be honest in its dealings with Ann as guarantor and that it not purposefully injure her right to obtain the benefits of the

---

[3] The Latsons allege that because they were required to reschedule the closing on the property, the delay in some fashion mitigates their responsibility for the interest rates to which they earlier agreed (and which were set out clearly in the promissory note they signed). Compl. ¶ 9.  The court is baffled by the supposed connection.  If anything, the delay in the closing gave the Latsons more time to review the terms of their loan, and if, as they allege, they did not understand the consequences of the floor rate, an opportunity to seek out financial advice.

contract. . . . [But here] no evidence was offered of . . . any misrepresentation or dishonest act on Shawmut's part or any design to deprive Ann of the benefits of her contract.").  Although the interest rates Plaza offered the Latsons (and to which the Latsons agreed) were high, they were not hidden or misrepresented, nor did Plaza do anything to frustrate the Latsons' opportunity to investigate and become familiar with the terms of the loans.  *Cf. Spritz v. Lishner*, 355 Mass. 162, 164 (1969) (one who signs a contract will be held to its terms whether or not he or she reads it or claims to not have understood its provisions); *Cormier v. Cent. Massachusetts Chapter of Nat'l Safety Council*, 416 Mass. 286, 289, 290 n.2 (1993) (a party to a contract is assumed to have read (and understood) its terms).

### Count II

"To prevail on a Chapter 93A claim, the plaintiff 'must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result.'" *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011), citing *Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F. Supp. 2d 442, 446 (D. Mass. 2005).[4]  The Complaint simply alleges that Plaza extended loans to the Latsons at

---

[4] The Latsons allege that they served Plaza with a demand letter, a condition precedent to the filing of a Chapter 93A, § 9 claim.  *See Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 287 (1985), quoting *Entrialgo v. Twin City Dodge*, 368

interest rates that over time the Latsons found difficult to pay.  No facts are alleged from which a finder of fact could infer deceptive or unfair conduct on Plaza's part.[5]

### ORDER

For the foregoing reasons, defendant's motion to dismiss is <u>ALLOWED</u>.  The Clerk will enter judgment for Plaza and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

**UNITED STATES DISTRICT JUDGE**

---

Mass. 812, 813 (1975) ("We have often held that '[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved . . . .'").

[5] The Latsons allege that Plaza requested an appraisal of the property in connection with the purchase, and that the resulting appraisal equaled the purchase price, which "seriously overstates the income potential of the property. . . . Defendant either knew or should have known that the value of the appraisal was too high." Compl. ¶ 13.  Plaza's request for an appraisal has no relevance to the Chapter 93A claim.  Even if the appraisal were inflated, it would not amount to an actionable misrepresentation by Plaza.  *See Schwartz v. Indep. Appraisals, LLC*, 2011 WL 5593108, at *6 (D. Mass. 2011).